UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MERCEDEZ M. H.,[1]

               Plaintiff,                **DECISION AND ORDER**

v.                                       1:22-cv-0035 (JJM)

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

        This is an action brought pursuant to 42 U.S.C. §405(g) to review the final determination of the Commissioner of Social Security that plaintiff was not entitled to social security disability ("SSD") benefits. Before the court are the parties' cross-motions for judgment on the pleadings [7, 8]. [2] The parties have consented to my jurisdiction [12]. Having reviewed their submissions [7, 8, 11], the plaintiff's motion is granted, and the Commissioner's motion is denied.

## BACKGROUND

        The parties' familiarity with the 940-page administrative record ([4]) is presumed. The parties have comprehensively set forth in their papers the plaintiff's treatment history and the relevant medical evidence. Accordingly, I reference below only those facts necessary to explain my decision.

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only the first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

Plaintiff filed for benefits in April 2019, alleging a disability beginning on June 9, 2018, due to ulnar shortening, depression, and kidney stones. Administrative Record [4] at 143, 292. Plaintiff's claim was initially denied. Id. at 143. An administrative hearing was held on June 1, 2020 before Administrative Law Judge ("ALJ") Arthur Patane. Id. at 175-88 (transcript of hearing). Plaintiff, who was represented by an attorney, testified. Id., at 178-87. Vocational expert ("VE") Esperanza DiStefano testified through a Vocational Interrogatory. Id. at 385-88.

On July 21, 2020, ALJ Patane issued a decision finding that plaintiff was not disabled. Id. at 143-51. In reaching that determination, he found that plaintiff's severe impairments were "status post forearm surgery and recent onset degenerative disc disease of the cervical spine". Id. at 17.[3] He ultimately concluded that plaintiff was not disabled pursuant to the Social Security Act from June 9, 2018 through the date of his decision. Id. at 151. He found that the plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations:

> "[S]he cannot write with the right hand, push/pull more than 10 pounds with the right upper extremity, and cannot otherwise use the right upper extremity on more than an occasional basis during a regular workday."

Id. at 148. Based upon the RFC and the vocational expert's testimony, ALJ Patane found that there were four jobs in the national economy that plaintiff could perform:

> "To determine the extent to which these limitations erode the unskilled light occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as Gate Guard . . . Usher . . . Ticket Taker . . . , and Sand[wich]-Board Carrier". . .

---

[3] ALJ Patane found that plaintiff's "variously characterized" "mood and anxiety disorders", "depression" and "kidney stones" were not severe impairments. Id. at 145-47. Plaintiff does not challenge these findings.

> Pursuant to SSR 00-4, I have determined that the vocational expert's testimony is consistent with the information contained in the [DOT]. Moreover, the job numbers cited clearly constitute a 'significant' number as required by the regulations.
>
> Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate under the framework of the above-cited rules."

Id. at 151.

Plaintiff argues that the Commissioner's determination is not supported by substantial evidence because the ALJ: 1) did not base the right upper extremity limitations incorporated into the RFC upon any evidence in the record; 2) failed to resolve at step 5 of his analysis the conflicts that exist between the Dictionary of Occupational Titles' ("DOT") description of the physical requirements of each identified occupation and the VE's interrogatory response that plaintiff could perform those jobs given the RFC; and 3) failed to consider the impact of impairments to the plaintiff's left upper extremity. See Plaintiff's Memorandum of Law [7-1] at 19-29.

The Commissioner responds that substantial evidence supports the ALJ's RFC determination with respect to limitations to both upper extremities, and that the ALJ properly relied upon the VE's explanation for the deviations between her testimony and the DOT. Commissioner's Brief [8-1] at 7-26.

I agree with plaintiff that ALJ Patane failed to identify and resolve the conflicts between the RFC and the DOT's description of the physical abilities required to do the jobs identified by the VE. Accordingly, the ALJ's determination is not supported by substantial

evidence. I therefore remand this case for further proceedings consistent with my analysis, below.

## ANALYSIS

A.      **Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

B.      **ALJ Patane Failed to Identify and Resolve Conflicts Between the DOT and the VE's Testimony**

Social Security Ruling ("SSR") 00-4p, entitled "Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions", governs how ALJs are to reconcile VE testimony that conflicts - or appears to conflict - with the DOT. It requires ALJs to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the [DOT], including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the

Department of Labor, and [e]xplain in the determination or decision how any conflict that has been identified was resolved." SSR 00-4p, 2000 WL 1898704 at *1. It provides further:

> "When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency".

Id. at *2. Further, "[i]f the VE's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict". Id. at *4. The ALJ must also identify the conflict in his or decision and explain how it was resolved:

> "When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified."

Id.

ALJ Patane cited SSR 00-4p in his decision, demonstrating his understanding of his obligations. "Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the [DOT]." Administrative Record [4] at 151. However, this statement is not supported by the evidence in the record or by the DOT's descriptions of the jobs identified by the VE.

In her Vocational Interrogatory, the VE stated there were no "conflicts between the occupational evidence" she provided "and the occupational information contained in the DOT and/or the SCO", but further qualified her answer:

> "The jobs I returned only require occasional reach, handle and finger except for the Ticket Taker position. According to the Selected Characteristics of jobs in the DOT, this job requires frequent reach, handle and finger. In my opinion the essential functions of this job can be performed using one upper extremity".

Id. at 387. As pointed out by the plaintiff, however, the DOT describes each of the jobs the VE identified as light work, which requires lifting an amount of weight in excess of, and more frequently than, the weight and frequency limitations incorporated into the RFC for plaintiff's right arm:

> "STRENGTH: Light Work -- Exerting up to 20 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or up to 10 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects."

DOT descriptions for Sandwich-Board Carrier (1991 WL 672646), Gate Guard (1991 WL 673099), Usher (1991 WL 672865), and Ticket Taker (1991 WL 672863); *see also* Plaintiff's Memorandum of Law [7-1] at 24. Further, Appendix C of the SCO defines lifting as "[r]aising or lowering an object from one level to another (includes upward pulling)". Appendix C. Physical Demands, SCO Defined in the Revised DOT, 1993 Edition, *available on* Westlaw.com. Pushing and pulling are defined as "[e]xerting force on an object" so that the object moves away from, or toward, the force. Id.

The definition of light work appears to conflict with the limitations built into the RFC:

> "I find that the claimant has the residual functional capacity to perform light work . . . except that she cannot write with the right hand, push/pull more than 10 pounds with the right upper extremity, and cannot otherwise use the right upper extremity on more than an occasional basis during a regular workday."

Administrative Record [4] at 147-48.  Specifically, light work requires the ability to "occasionally" exert up to 20 pounds of force (i.e. lift, push, or pull).  However, the RFC states that plaintiff cannot pull greater than 10 pounds with her right arm.  Further, light work requires the ability to "frequently" exert up to 10 pounds of force or to "constantly" exert a negligible amount of force.  The RFC states that plaintiff cannot use her right arm greater than occasionally.

The Commissioner argues that "[b]ecause the DOT does not specify that the lifting and carrying must be done with both arms, and because plaintiff's left arm was unimpaired, there was no conflict between the DOT and the jobs identified by the [VE]." Commissioner's Brief [8-1] at 24.  I do not agree.  The Second Circuit rejected a similar argument advanced by the Commissioner with respect to "reaching" in Lockwood v. Commissioner, 914 F.3d 87 (2d Cir. 2019).

In Lockwood, the RFC restricted plaintiff from all "overhead reaching".  Id. at 89. The VE testified there were three specific jobs that plaintiff could perform with that restriction. Id.  Plaintiff argued that there was an apparent conflict between the VE's testimony and the DOT, which specified that each of the three jobs required occasional or frequent "reaching".  Id. at 90, 92. However, a 1985 SSR defines "reaching" as "extending the hands and arms *in any direction*".  Id. at 92.  The Commissioner argued there was no conflict "because describing a job as requiring 'reaching' does not necessarily establish that it requires overhead reaching" and because "the [DOT's] narrative descriptions of the three jobs at issue contain no express reference to overhead reaching".  Id. at 92-93.  The Court rejected both arguments:

> "[W]hile this Court could guess what the three jobs Heller identified require in reality, it was the Commissioner's duty to elicit an explanation from Heller as to whether those occupations actually require overhead reaching. . . . The importance of teasing out such details is precisely why the Commissioner bears an affirmative responsibility to ask about *any possible conflict*

>between vocation expert evidence and information provided in the [DOT]. . . . Absent such an inquiry, the Commissioner lacks a substantial basis for concluding that no such conflicts *in fact* exist. . . .
>
>While the [DOT]'s narrative descriptions certainly make it conceivable that the three jobs Heller identified do not require overhead reaching, the Commissioner bore the burden of showing that Lockwood is actually capable of performing those jobs. . . . If the Commissioner wished to rely on Heller's expert testimony to carry that burden, the Ruling makes clear that she was obliged to identify and resolve the *apparent* conflict between that testimony and the [DOT], even if there is a chance that, upon inquiry, no *actual* conflict would have emerged."

Id. at 93. Other courts have concluded that an apparent conflict exists under circumstances analogous to those here. In Chavez-Fuentes v. Saul, 2020 WL 5646600 (S.D. Fla., 2020), the plaintiff challenged the ALJ's reliance on VE testimony where he failed to ask the VE whether his testimony conflicted with the DOT. Id. at *7. There, the RFC restricted plaintiff to lifting "twenty pounds occasionally and ten pounds frequently with his right hand but [could] only lift ten pounds occasionally and ten pounds frequently with his left hand". Id. The VE testified that plaintiff "could still perform three jobs that were all classified as light work with the DOT". Plaintiff argued that the ALJ failed to identify or resolve the apparent conflict between the VE's testimony and the DOT's definition of light work. Id. The Commissioner argued "there was no apparent conflict that the ALJ was required to identify and resolve because neither the DOT's definition of light work nor the DOT's descriptions for the jobs at issue specify that a person must be able to occasionally lift up to twenty pounds with each hand separately" and because "the DOT is silent on whether both hands are necessary".

Finding that an apparent conflict existed, the Court determined that, where the DOT is silent concerning a specific physical function, "the issue for the Court is whether the conflict presented is an apparent one which results from a reasonable comparison of the DOT

with the VE's testimony, or whether an inference is required in order to find a conflict between the DOT and the VE's testimony." Id. at *9.  The Court concluded that no inference was required under the circumstances present there, and that an apparent conflict existed:

> "Here, of course, no such inference is required.  The DOT definition for the jobs that the VE identified states that the Claimant must be able to lift twenty pounds, and yet he cannot do that with his left hand.  There is no need to infer anything to find that conflict."

Id.  I agree with plaintiff that here, a similar apparent conflict exists that the ALJ was required to resolve.  Nowhere does the ALJ's decision identify the conflict between the RFC's limitations to the amount of weight plaintiff can push or pull with, or the frequency of her ability to use, her right arm and the VE's testimony that plaintiff could perform the jobs identified by the DOT as light work positions.  The decision simply states that the VE's testimony "is consistent" with the DOT.  Administrative Record [4] at 151.  As the analysis above demonstrates, however, this is not true.  Accordingly, the ALJ's determination that there are jobs available in the national economy that plaintiff is capable of performing is not supported by substantial evidence.

Finally, the Commissioner argues that the ALJ satisfied his obligation to explore conflicts with the DOT:

> "Here, the ALJ probed into any apparent conflicts, in the interrogatories he provided to the vocational expert (Tr. 387).  The ALJ asked the VE, whether there were any conflicts between the occupational information she provided and the DOT (Tr. 387).  The ALJ did not stop there, but probed further.  The ALJ requested that, if the answer to the first question was yes, the VE should provide an explanation for why the information she provided was conflicted with the DOT (Tr. 387).  Unlike in *Lockwood*, the vocational expert responded that her information was mostly consistent with the DOT, for three out of the four jobs, but that there was an apparent conflict with the fourth (Tr. 387). . . . Thus, the vocational expert identified, and resolved, the apparent conflicts that she viewed, between her testimony and the DOT, with respect to the hand-use requirements of the jobs.  The ALJ,

>having investigated the apparent conflicts, explained that she credited the opinion of the VE (Tr. 151). This is precisely what *Lockwood* required from the VE and the ALJ."

Commissioner's Brief [8-1] at 23.

I do not agree. First, SSR 00-4p "places the onus on the Commissioner, acting through her ALJs, to affirmatively identify any conflicts." Lockwood, 914 F.3d at 93-94. *See also* Marjanovic v. Commissioner, 2020 WL 3445676, *3 (W.D.N.Y. 2020) (SSR 00-4p "places an affirmative duty on the ALJ to identify and resolve any conflict between he VE's testimony and the DOT before relying on such testimony"); Rachel F. v. Commissioner, 2023 WL 2595007, *8 (W.D.N.Y. 2023) ("the burden of addressing these issues was on the ALJ, not the VE, and the ALJ did not address the potential conflict as required by Lockwood") . Further, even if the VE's explanation adequately addressed the conflict between her testimony and DOT concerning the "reach, handle and finger" requirements of the ticket taker position, that analysis does not satisfy the ALJ's responsibility to resolve the conflict concerning the amount of weight and frequency that the plaintiff was able to push, pull, or lift with her right hand. Resolving one conflict does not satisfy the ALJ's obligation to resolve all the apparent conflicts. Marjanovic, supra at *5 ("[a]lthough the ALJ's decision resolves some other conflicts between the DOT and VE's testimony, . . . it does not identify this conflict. Accordingly, remand for further proceedings is required").

Accordingly, this case is remanded for a proper identification and analysis of the apparent conflicts between the DOT and the VE's testimony, including further development of the record, if necessary. Because I am remanding this matter for further administrative proceedings, I do not reach plaintiff's remaining arguments. *See* Shaine J. v. Commissioner, 2020 WL 68887622, *5 (W.D.N.Y. 2020).

## CONCLUSION

For these reasons, plaintiff's motion for judgment on the pleadings [7] is granted, and the Commissioner's motion for judgment on the pleadings [8] is denied.

**SO ORDERED**.

Dated: September 7, 2023

/s/ *[signature]*
JEREMIAH J. MCCARTHY
United States Magistrate Judge